## In the matter of the TUTORSHIP OF ROSE AIMÉE MOSSY and others, minor children of TOUSSAINT MOSSY, deceased.

No legal tutor can be appointed to a minor, unless both the father and mother of the minor be dead.   C. C. 281.

Where a mother, the natural tutrix of her minor children, forfeits her tutorship by marrying a second time, without having previously convoked a family meeting to determine whether she shall continue as tutrix, and is re-appointed by the judge, under the advice of a family meeting, she will hold the appointment as a dative tutrix.   C. P. 951.

Where the proceedings in a contest relative to the tutorship of a minor, have had no other object than to ascertain which of the parties was legally entitled to the appointment, neither having any personal interest in the matter, the costs will be ordered to be paid out of the estate of the minors.

APPEAL from the Court of Probates of the parish of New Orleans, *Bermudez*, J.

SIMON, J.   Toussaint Mossy, Jr., who died in 1838, left four minor children.   His widow was confirmed as their natural tutrix, but sometime in 1842, she contracted a second marriage with André Rey, and, having failed to comply with the requisites of the law, was *ipso facto* deprived of the tutorship.   Thereupon, the under-tutor made application to the Court of Probates, to convene a family meeting for the purpose of deliberating on the choice of a tutor.   An order was granted accordingly ; but before the meeting was held, the widow presented a petition praying to be re-appointed tutrix, which re-appointment she claimed as a legal right.   This application was referred to the family meeting, previously ordered.   In the meantime, the grandfather of the minors, on the paternal side, petitioned the Probate Court, and prayed to be appointed tutor ; but as there was a grandfather on the maternal side, the latter was cited, according to article 952 of the Code of Practice, to show cause why the petitioner should not be appointed.   The widow's father answered by denying that this was a case for the appointment of an ascendant ; and alleging that if it were, the mother, being the nearest ascendant, and willing to accept the tutorship, was entitled to the preference.   He further averred that, if the court should be of a different opinion, he was him-

self, for certain reasons by him stated, entitled to be appointed in preference to the petitioner.

A family meeting having been convened, acted on the application of the widow. Six members had been summoned. Five of them recommended her appointment; but one of them, the grandfather on the paternal side, insisted on his previous demand, and objected to her being appointed; which objection was also made by the under-tutor, who sustained the demand made by the father of the deceased, and sided with him.

Sometime previous, the widow had obtained leave to intervene in the issues made between the two grandfathers, and reiterated her claim to be re-appointed; and she subsequently presented a petition to the Court of Probates, praying that the deliberations of the family meeting above mentioned, might be homologated, and that she might be appointed and sworn accordingly.

On the trial of this case before the lower court, the grandfather on the paternal side, declared, through his counsel, that though he insisted on the appointment of one of the grandfathers, he was willing to yield the preference to the widow's father; whereupon the judge *a quo*, being of opinion that the circumstances of the case made the appointment of a legal tutor necessary, without the intervention of a family meeting, and that the two grandfathers who had applied for the tutorship, had, by the effect of the law, preference over the mother, who, under the present circumstances, could only be entitled to the tutorship by the appointment of the judge, ordered that Jean Baptiste Armant, grandfather of the minors on the maternal side, should be appointed their tutor, and that their mother continue to retain the superintendence of the minors and the care of their education. From this judgment, the widow and her second husband have appealed.

The widow's father, who is the principal appellee, joined issue before this court, by expressing his readiness to submit to our decision, wishing, however, that his daughter, the appellant, might be appointed tutrix of her children.

The first and principal question which this case presents is, whether the Judge of Probates could appoint a tutor by the effect of the law, to the minors Mossy, during the life time of their mother; or, in other words, whether the right given by law to as-

cendants of minors to become their tutors, can be exercised before the death of both their father and mother.

Article 281 of the Civil Code, on which the claim of the appellees is based, is in these words : " When a tutor has not been appointed to the minor *by the surviving father or mother*, or if such tutor, having been appointed, has not been confirmed, or has been excused, then the judge ought to appoint to the tutorship the nearest ascendant in the direct line of the minor." This appointment is made by the judge, without the intervention of a family meeting, which is only necessary where there are two ascendants in the same degree. Civ. Code, arts. 282, 283. Code of Pract. arts. 954, 955. The articles of our Code, upon which this question turns, were mainly borrowed from the Code Napoleon, articles 402 and 403, which contain similar provisions : " *Lorsqu'il n'a pas été choisi au mineur un tuteur par le dernier mourant de ses père et mère*," &c. The only difference between the Napoleon Code and ours, is, that our law has not only provided for the appointment of a legal tutor, when none has been appointed by the surviving father or mother ; but also where such tutor, having been appointed, has not been confirmed, or has been excused ; whilst in the French Code, it is limited to the first contingency. It seems to us that the very expressions used in the law, " *by the surviving father or mother*," indicate clearly that the tutorship in question only takes place after the death of *both father and mother*, and that during the lifetime of the survivor, the right of the ascendants to claim this tutorship is not open, and cannot be exercised. In support, however, of the doctrine which we are about to establish, and although the text of our law does not appear to us to be susceptible of two interpretations, let us refer to the commentators who have written upon the articles of the French Code corresponding with ours, and see how far they sustain our views upon this subject. Toullier, vol. 2, Nos. 1106 and 1107, after reciting the substance of the article 402, says : " *Mais cette tutelle, n'est admise que dans le cas où le survivant des père et mère est mort sans avoir choisi un tuteur ;*" and, among his illustrations showing the cases in which it does take place, he puts the very case now under consideration. Favard de Langlade, *verbo* Tutelle, § 2, entertains the same doctrine, and says : " *Elle n'est ad-*

*mise que dans le cas où le survivant des père et mère est mort sans avoir choisi un tuteur. Si donc la mère survivante a perdu la tutelle en se remariant, il n'y a pas lieu à la tutelle légale des ascendants.*" This last conclusion was adopted by the Court of Cassation, who decided that article 402 was only applicable to the case of the decease of both father and mother. Sirey, 1807, 1st part, p. 156. See also Merlin, *verbo* Tutelle, scct. 2, § 2, art. 1, No. 3. Delvincourt, vol. 1, p. 108. It seems, therefore, clear, that a legal tutor cannot be appointed to a minor, unless his father and mother are *both* dead; and, in the present case, we feel no hesitation in adopting the conclusion, that, although the appellant has lost the natural tutorship of her children by contracting a second marriage, this circumstance does not give rise to the appointment of a legal tutor.

But the question will occur, under what denomination shall the new tutor be appointed? The mother has lost the natural tutorship; there is no testamentary tutor appointed by the deceased; and the ascendants, according to the opinion above expressed, have no right to claim the legal tutorship of the minors. There remains only the dative tutorship, which, under article 288 of our Code, takes place only, " when a minor is an orphan, and has no tutor appointed by his father or mother, nor any relations who may claim the tutorship by the effect of the law, or when the tutor appointed in some of the modes above expressed, is liable to bo excluded according to the rules hereafter established, or is excused legally," &c. Toullier, vol. 2, No. 1107, on the subject under consideration, says : " *Si la mère survivante se remarie, et n'est pas maintenue tutrice, il faut recourir à la tutelle dative déférée par le conseil de famille ; les ascendants ne sont plus tuteurs de droit.*" This is in accordance with the decision rendered in the case of *Robins* v. *Weeks,* (5 Mart. N. S. 379,) in which this court held, that " the mother who marries a second time, without taking the advice of a family meeting, cannot, in case of re-appointment, be considered as holding the office by natural right, but under the law." She becomes, therefore, a dative tutrix, that is to say, she holds her office under the appointment of the judge, made with the advice of a family meeting, without there being any positive obligation on the family meeting to appoint her. This is clearly the

meaning and purport of article 951 of the Code of Practice, which, without creating another sort of tutorship, in addition to those included in the Civil Code, assimilates the mother to an ordinary dative tutor, saying : " If the minor be the child of a first marriage, and the mother has contracted a second, the judge shall not confer the tutorship on her, during the life of her second husband, except by the advice of a family meeting, duly convoked for that purpose." This law was passed for the undoubted purpose of adding another contingency to those contained in article 288 of the Civil Code, and of giving to the mother, who has lost the natural tutorship of her children, an opportunity, nay, even the right of claiming her re-appointment, and of resuming the administration of the tutorship, in the new capacity of dative tutrix. Her pretensions are to be submitted to a family meeting, who may recommend her to the judge by whom she is to be appointed, and, if appointed, she becomes subject to the same obligations imposed by law on dative tutors. She holds her office under the provisions of the law, and not by natural right.

Under this view of the case, we think the judge *a quo* erred, in appointing J. B. Armant, one of the appellees, as legal tutor to the minor children of Toussaint Mossy, Jr., deceased. As the objection made to the appointment of the appellant, was based only upon the supposed legal right of the grandfathers to be appointed in preference to the minors' mother ; and as we are of opinion that such right did not exist, the proceedings of the family meeting recommending the appointment of the appellant, ought to be homologated.

This is a family controversy, in which the sole object of the appellees appears to be to ascertain how far the widow is entitled to resume the tutorship of her children, after having lost it. Neither of them is personally interested in the matter ; and it seems that, in order to protect themselves from responsibility, their only desire is that the tutorship shall be entrusted to the party who may be legally entitled thereto. Nay, one of them has even expressed his wish that the appellant may succeed in her application, by being appointed tutrix of her children. Under such circumstances, we think that the costs incurred by the proceedings had before

the lower tribunal, and by this appeal, should be paid out of the minors' estate, for whose benefit they were had.

It is, therefore, ordered, that the judgment of the Probate Court be reversed; that the proceedings and deliberations of the family meeting, recommending the appellant to be appointed dative tutrix of her children, be homologated; that the appellant be confirmed in the said dative tutorship, and appointed accordingly, on complying with the requisites of the law before the Judge of the Court of Probates; and that the costs in both courts be borne by the minors, to be paid out of their estate.

*Canon*, for the appellants.

*L. Janin*, contra.